[Crim. No. 189.  Department One.—April 1, 1897.]

THE PEOPLE, RESPONDENT, v. JAMES D. PAGE, APPELLANT.

CRIMINAL LAW—EMBEZZLEMENT BY GUARDIAN—SUFFICIENCY OF INDICT-MENT—PARTICULARS OF GUARDIANSHIP.—An indictment for embezzlement which after stating the jurisdictional facts charges that, at a specified date, the defendant "being intrusted with and having in his control" a specified sum of money, "as guardian, trustee, and agent" of an insane person named, "for the use and benefit" of said insane person, and being his "property," did, at a specified time and place, "willfully, unlawfully, feloniously, and fraudulently embezzle, convert, and appropriate the same to his own use," is sufficient to meet the requirements

of section 506 of the Penal Code defining the offense, and also of section 950 of the Penal Code, requiring the indictment to state "the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended"; and it is not necessary that the indictment should allege the particulars in regard to the appointment of the defendant as guardian, or in regard to the proceedings in the matter of the guardianship.

Id.—Motion to Set Aside Indictment—Testimony of Defendant before Grand Jury—Failure to Indorse Name.—Where there is nothing in the record to show that the appearance of the defendant as a witness before the grand jury was not voluntary, or that he did not voluntarily give all the evidence elicited from him by the grand jury, it is not ground for a motion to set aside the indictment that the defendant "testified before said body, he not then and there being informed of his legal rights as a defendant witness, and that his name does not appear among the names of witnesses upon said indictment."

Id.—Notice from Grand Jury not Required—Attorney—Presumption of Knowledge.—It is not made the duty of the foreman or any member of the grand jury to notify a defendant who appears before it as a witness of his right to counsel before testifying; and where the defendant is an attorney at law, and had served a term as district attorney, he must be presumed to have known his rights and privileges as a witness.

Id.—Hearsay Evidence—Recital in Order Removing Guardian—Insufficient Proof of Embezzlement—Absence of New Appointment or Demand.—A recital in an order removing the guardian of an insane person, to the effect that it appeared to the satisfaction of the court that the guardian "has appropriated to his own use the funds of the said insane person, and that he has rendered no account thereof," is hearsay and incompetent as evidence tending to show embezzlement; and where no other order was made, and no person was appointed guardian in his stead, and no demand was made upon him for the money and property of the ward in his possession, and there is no other evidence to show that the defendant ever spent, wasted, or appropriated to his own use any of the money of his ward, the judgment of conviction must be reversed and a new trial granted for insufficiency of the evidence to justify the verdict.

Id.—Drawing Money from Bank.—The mere fact that the defendant drew out from a savings bank most of the money deposited there to the credit of the insane person is not a criminal act, and does not show a criminal intent to misappropriate the money, such withdrawal being consistent with some other deposit or lawful use of the money, and with the supposition that at the time of the trial the defendant may still have had all the money ready to be paid over on demand to any one authorized to receive it.

Id.—Order for Payment to Asylum—Effect of Nonpayment.—The fact that the defendant, when ordered by the judge to pay a specified sum to the insane asylum, did not pay the same, does not tend to show a misappropriation of that sum of money, where the defendant may have believed that the insane person was kept in the "pauper ward,"

and that the asylum was not entitled to demand pay for keeping and caring for him.

ID.—FAILURE OF DEFENDANT TO TESTIFY — REVIEW UPON APPEAL—PRE. SUMPTION OF INNOCENCE—SUPPORT OF VERDICT.—The failure of the defendant to take the witness-stand in his own behalf cannot be taken into consideration by the appellate court on the point of the insufficiency of the evidence to justify the verdict; but the defendant is presumed to be innocent until proved to be guilty; and facts and circumstances which cannot be considered by the trial court in determining as to the guilt or innocence of the accused, cannot be resorted to in this court to support a verdict not otherwise authorized.

ID.—ARREST IN ANOTHER STATE — FUGITIVE FROM JUSTICE — INSUFFICIENT PROOF.—The mere fact that the defendant was arrested in New York does not warrant any inference that he was a fugitive from justice, where there is nothing in the record to show when or under what circumstances he left San Francisco and went to New York, or that he may not have gone there on business or pleasure with intent soon to return.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. WILLIAM T. WALLACE, Judge.

The facts are stated in the opinion.

*J. N. E. Wilson,* and *Alexander Campbell, Jr.,* for Appellant.

The motion to set aside the indictment should have been granted, because no demand had ever been made upon the defendant for the money alleged to have been embezzled. (Civ. Code, secs. 249–51; Code Civ. Proc., secs. 1764, 1765, 1770, 1801.) The indictment should have been set aside upon the ground that the defendant testified before the grand jury in obedience to a subpœna, and that upon such testimony he was not informed as to his rights as a defendant witness, and his name was not placed with the other witnesses upon the indictment. (Const., art. I, sec. 13; Pen. Code, secs. 858, 859.) The demurrer should have been sustained, as the indictment did not allege the particular circumstances of the offense. (*People* v. *McKenna,* 81 Cal. 158; *People* v. *Neil,* 91 Cal. 465.) The evidence is insufficient to sustain a conviction, as it did not show a demand

upon the defendant for the money. (*People* v. *Tomlin-son*, 66 Cal. 344; *People* v. *Royce*, 106 Cal. 176, 177; *People* v. *Carrillo*, 54 Cal. 63; Desty's American Criminal Law, sec. 146 *a*.)

*Attorney General W. F. Fitzgerald*, and *Deputy Attorney General C. N. Post*, for Respondent.

The court properly overruled the motion to set aside the indictment. A demand and refusal in the case of embezzlement are not necessary to conviction. (*Hollingsworth* v. *State*, 111 Ind. 296; *State* v. *Mason*, 108 Ind. 48; *Commonwealth* v. *Tuckerman*, 10 Gray, 173; *Commonwealth* v. *Hussey*, 111 Mass. 432; *State* v. *Mims*, 26 Minn. 191.) The indictment should not have been set aside because of defendant having testified before the grand jury, nor because, after so having testified, his name was not placed upon the indictment with the names of the other witnesses who testified before said grand jury. (*People* v. *Northey*, 77 Cal. 629; Pen. Code, sec. 920; *People* v. *King*, 28 Cal. 265; *People* v. *Treadwell*, 69 Cal. 228.) The indictment charges in the language of the code, and the demurrer thereto was properly overruled. (*People* v. *Rozelle*, 78 Cal. 89; *People* v. *Carolan*, 71 Cal. 195; *People* v. *Edson*, 68 Cal. 549; *People* v. *Marseiler*, 70 Cal. 98; *People* v. *Donaldson*, 70 Cal. 116; *People* v. *Rogers*, 81 Cal. 209; *People* v. *Forney*, 81 Cal. 118; *People* v. *Russell*, 81 Cal. 616; *People* v. *Savercool*, 81 Cal. 650; *People* v. *Mahlman*, 82 Cal. 585; *People* v. *Naylor*, 82 Cal. 608; *People* v. *Harrold*, 84 Cal. 567; *People* v. *Keeley*, 81 Cal. 210.)

BELCHER, C.—The defendant was convicted of the crime of embezzlement, and has appealed from the order denying his motion for a new trial, and from the final judgment entered against him.

The indictment was filed May 29, 1895, and after stating the jurisdictional facts it charged that on or about the twenty-eighth day of May, 1895, the defendant,

" being then and there intrusted with and having in his control the sum of $4,362 in lawful money of the United States, . . . . as guardian, trustee, and agent of one Louis Lichtneger, an insane person, for the use and benefit of said Louis Lichtneger, then and there the property of and belonging to said Louis Lichtneger, did then and there, to wit, at said city and county of San Francisco, on or about said twenty-eighth day of May, 1895, willfully, unlawfully, feloniously, and fraudulently embezzle, convert, and appropriate the same to his own use, contrary," etc.

When called upon to plead, defendant moved the court to set aside the indictment upon the grounds: 1. That the said indictment was not found, indorsed, nor presented as prescribed in the Penal Code; 2. That the names of the witnesses examined before the grand jury, or whose depositions were read before the grand jury, were not inserted at the foot of the indictment, nor indorsed thereon; 3. That a person, not a member of the grand jury, nor judge of the court, nor the district attorney, was permitted to be present during the session of the grand jury, and when the charge embraced in the indictment was under consideration, contrary to the provisions of section 925 of the Penal Code.

The motion was denied, and thereupon the defendant demurred to the indictment upon the ground that it did not state facts sufficient to constitute a public offense. The demurrer was overruled, and the defendant then pleaded "not guilty."

1. The indictment was found by a properly impaneled grand jury, and in our opinion was sufficient in form. It was drawn substantially in the language of section 506 of the Penal Code, which declares that "Every trustee . . . . intrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, . . . . is guilty of embezzlement."

The defendant was a trustee of his ward (Civ. Code, sec. 250), and under the provisions of the section above quoted, the indictment was authorized and found.

Indictments framed in the language of the statute defining the offense charged have been held sufficient so many times by this court that we deem it unnecessary to cite the cases.

It is true that an indictment must contain " a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." (Pen. Code, sec. 950.)

The indictment here was sufficient to meet the requirements of the statute, and it was not necessary, as claimed for appellant, to allege the date of his " appointment as guardian and in what court appointed, as well as the issue of letters of guardianship to him and the fact of his taking possession of certain moneys of his ward; the fact of his filing his account and the settlement thereof; the fact that he was incapable of discharging his trust or unsuitable therefor, or had wasted or mismanaged the estate, and that the court upon due notice given had removed him and had demanded that he should surrender the estate of his ward to the person found to be lawfully entitled thereto."

2. " The grand jury is not bound to hear evidence for the defendant, but it is their duty to weigh all the evidence submitted to them, and, when they have reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced." (Pen. Code, sec. 920.)

It is shown that the defendant " appeared as a witness before the grand jury finding the aforesaid indictment, and testified before said body, he not then and there being informed of his legal rights as a defendant witness, and that his name as such witness does not appear among the names of witnesses upon said indictment." It is not shown, however, and there is nothing in the record to indicate, that he did not voluntarily appear

before the grand jury and voluntarily give all the evidence elicited from him.

In *People* v. *King*, 28 Cal. 273, it is said: "So far as the motion was based upon the ground that the defendant had testified against himself before the grand jury is concerned, it is only necessary to say that we know of no rule of law which made it illegal for him to testify if he felt inclined to do so, nor do we know of any rule of law which makes the voluntary testimony of the defendant before the grand jury a ground for setting aside the indictment." And we may add that we know of no rule of law which made it the duty of the foreman, or any member of the grand jury, to inform the defendant of his right to consult counsel before testifying. Besides, the defendant was himself an attorney at law, and had served a term as district attorney of the city and county of San Francisco, and must be presumed to have known what his rights and privileges were as a witness.

It is not claimed that any person not a member of the grand jury was present at the session when the charge embraced in the indictment was under consideration, except the defendant himself while he was being examined as a witness. It is true that the name of defendant, as a witness, was not inserted at the foot of the indictment or indorsed thereon, but it was not necessary that it should be. In *People* v. *Northey*, 77 Cal. 618, it was expressly decided that if the defendant has testified before the grand jury, it is not necessary to indorse his name upon the indictment as a witness, and the failure to do so is not ground of motion to set aside the indictment.

It follows that the court did not err in refusing to set aside the indictment or in overruling the demurrer.

3. The most serious question in the case is that relating to the sufficiency of the evidence to justify the verdict.

The facts proved were as follows: On January 3, 1891, the defendant, who was then the district attorney of the city and county of San Francisco, was duly appointed

guardian of the estate of Louis Lichtneger, an insane person, and upon giving the bond required by the court, letters of guardianship were duly issued to him. On April 4, 1891, an order was made by the court that he file his account. This order was not complied with until May 4, 1894, when he filed an account, showing that of the money received by him as guardian, he paid in June, 1892, to the asylum at Agnews $190, and had a balance due the estate of $3,776.92. When defendant was appointed guardian there was on deposit in the German Savings and Loan Society of San Francisco to the credit of Lichtneger the sum of $3,561.01. Of this sum and the interest that accumulated thereon, defendant, as guardian, drew out of the bank from time to time all but $51; the first draft for $353 being made on April 24, 1891, and the last for $49.27 being made on September 7, 1892. On June 12, 1894, Judge Levy, in whose department of the superior court the matter of the estate was pending, and who had made all the orders before mentioned, made an order that defendant pay $475 to the superintendent of the asylum at Agnews, that amount having been found due for the care of Lichtneger. The money not being paid as ordered, an attachment was issued on July 3, 1894, but returned unserved; and again an attachment was issued on August 15, 1894, which was also returned unserved, and nothing more was done in the matter during that year. Judge Levy testified: " I do not know what Mr. Page's reasons were for not paying the money as ordered"; but immediately following, and in this connection, one Hufschmidt testified that he had been in the habit of visiting the asylum about once in every six weeks; that he met Lichtneger there, and "during the first part of the time that I have seen him there he was in the pay ward, but the latter part of the time he was in the pauper ward."

In January, 1895, Judge Levy's term of office expired, and Judge Slack succeeded him. Nothing appears to have been done in the matter of the said estate until May 2, 1895, when an order was made requiring the

defendant to appear on the next day and show cause why he should not file his account. A citation was issued and returned unserved. On May 3d, another order was made fixing May 10th as the time the defendant should appear and show cause why he should not be removed from his office of guardian. A citation was again issued and returned, showing "guardian could not be found." The court then caused a citation to be published, fixing May 20th as the time when the defendant should show cause why he should not be removed from his office of trust. After the publication of the citation the defendant called upon the judge at his chambers, and requested that the hearing of the matter might be postponed until May 27th, and the request was granted. On May 27th he again called and requested a further continuance until the next day, which continuance was also granted. On May 28th defendant did not appear, and an order was then made removing him as guardian of the said estate. "No other order was made, and no person was appointed guardian in his place and stead, and no demand was made upon him for the moneys and goods in his possession and belonging to the said estate of Louis Lichtneger."

The minute order of removal, containing the recital "and it appearing to the satisfaction of the court that said Page has appropriated to his own use the funds of the said insane person, and that he has rendered no account thereof," was next introduced in evidence, against the objection of defendant that it was immaterial, irrelevant, incompetent, and hearsay.

In January, 1896, defendant was arrested in the city of New York, and he stated at the time to the officer arresting him "that he was anxious to return to stand his trial for the offense of which he was accused."

The above is in substance all the evidence introduced by the prosecution, and at the conclusion of it the defendant by his counsel moved the court to instruct the jury to acquit "upon the ground that the facts proven

by the prosecution were not sufficient to establish the guilt of the defendant of embezzlement; that there was nothing in the proof to show that Mr. Page had fraudulently misappropriated any of his ward's money or property; that no demand had ever been made upon him for the money or property of his ward, and that no person had ever been designated by any court or by any person in authority to whom the defendant, Mr. Page, could have delivered the money or property of his ward."

The court overruled the motion, and thereupon the case was submitted without further testimony.

It is very evident that the recital above quoted from the order removing defendant from the position of guardian did not constitute any evidence tending to support the charge of embezzlement. At most it was mere hearsay, and Judge Slack, who made the order and was on the stand as a witness, was not asked and did not attempt to state upon what ground the recital was based. It must therefore be entirely disregarded.

Leaving out this recital, it will be observed that there was no evidence showing that defendant ever spent, wasted, or appropriated to his own use any of the money of his ward. It is true he drew out from the savings and loan society most of the money which was on deposit there to the credit of Lichtneger, but this was not a criminal act and did not show a criminal intent to misappropriate the money. He may have intended to deposit the money in some other bank or to invest it in safe securities. The cashier of the savings and loan society, who testified to the withdrawal, stated: "I do not know what Mr. Page did with the money which he withdrew. He may have deposited it in some other bank or some safe deposit box." So far as appears the defendant at the time of the trial may have still had all the money ready to be paid over on demand to any one authorized to receive it. The fact that he did not pay to the insane asylum the $475 ordered to be paid by Judge Levy does not tend to show a misappropriation of that money. He may have believed that Lichtneger

was in the "pauper ward," and that the asylum was not entitled to demand pay for keeping and caring for him.

It is urged for respondent that while "the fact that a defendant does not take the witness-stand in his own behalf cannot be taken against him by the jury, yet it is in our judgment a fact that should be taken into consideration by this court on the point of the sufficiency of the evidence to justify the verdict."

We do not think so. A person accused of crime is presumed to be innocent until he is proved to be guilty; and facts and circumstances which cannot be considered by the trial court or the jury in determining as to the guilt or innocence of the accused cannot be resorted to in this court to support a verdict not otherwise authorized.

Again, it is urged that the defendant when arrested was a fugitive from justice, and that this is a circumstance which may be considered in determining as to his guilt. But it does not appear that he was a fugitive from justice. There is nothing in the record to show when or under what circumstances he left San Francisco and went to New York. He may, so far as the evidence shows, have gone on a business or pleasure trip, and have been intending soon to return.

In *People* v. *Royce*, 106 Cal. 173, the defendant was the treasurer of the Veterans' Home Association, a corporation, and was charged with the embezzlement of the balance of a draft received by him, amounting to about two thousand and fifty dollars. He was convicted, and on appeal the judgment was reversed by this court sitting in Bank, upon the ground that the verdict was not justified by the evidence.

The court said: "What became of this balance does not appear. Appellant may have had it ready to be produced whenever called for. . . . . The by-laws also provide that all moneys in the hands of the treasurer should be turned over to his successor in office, but it does not appear that appellant ever had a successor in office. . . . . There is no evidence that any demand was

ever made upon appellant for said money by the associ-
ation, or by any officer or agent thereof, or by any other
person. . . . . He may have had the money all that time
ready to respond to any demand of the association."

If the verdict in that case was not justified by the
evidence, it is quite clear that it was not in this.

We advise that the judgment and order appealed from
be reversed and the cause remanded for a new trial.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the
judgment and order appealed from are reversed and the
cause remanded for a new trial.

GAROUTTE, J., HARRISON, J., VAN FLEET, J.