[Crim No. 6046.   Second Dist., Div. Two.   Mar. 5, 1958.]

THE PEOPLE, Respondent, v. RAMIRO TORRES, Appellant.

Robert W. Armstrong, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

HERNDON, J.—In an information filed by the district attorney, appellant was accused of violating section 11500 of the Health and Safety Code in that he wilfully and unlawfully had in his possession the narcotic marijuana. After his motion to set aside the information (Pen. Code, § 995) had been denied, appellant entered a plea of "not guilty."

A trial by jury having been duly waived, the parties stipu-

lated to a submission of the cause on the transcript of the preliminary hearing, each side reserving the right to offer additional evidence. Appellant testified at the trial. The court found him guilty as charged, denied both his motion for a new trial and his application for probation and sentenced him to state prison.

This appeal is from the judgment and from the order denying the motion for a new trial. The sole question presented is whether the incriminating evidence against appellant was seized unlawfully and in contravention of his constitutional right to be protected against unreasonable searches and seizures.

The facts bearing upon this narrow issue may be stated briefly. At approximately 6 p. m. on March 19, 1957, Officer King of the Narcotics Division of the Los Angeles Police Department was informed by Sergeant Bitterhoff of the Robbery Division that a man named Tony residing at 136 West 69th Street was selling narcotics. At approximately 9:45 p. m. on March 19, 1957, Officer King was standing in front of the residence at the given address when appellant (whose nickname was Tony) opened the door and came out. The officers identified themselves as police officers and stated to appellant that they had information that he was using and dealing in narcotics. He denied the accusatory statement. The officers then asked him whether ''it would be all right if we'd look in the house.'' Appellant answered, ''Yes, go ahead.''

The officers thereupon entered the house and made a search. They had neither search warrant nor warrant of arrest. In the course of the search the officers found in a drawer of the front bedroom dresser a brown handkerchief which contained a portion of a medicine dropper and hypodermic needle. Also in the same drawer was a brown wrapped cigarette. In an ash tray by the bedstand, Officer King found two portions of a brown wrapped cigarette. These cigarettes contained marijuana according to the testimony of a forensic chemist. In the pocket of a suit was found a brown paper bag containing 13½ grams of material identified as marijuana. On a shelf on the back porch there was found a can containing a small quantity of the same narcotic substance.

After making the discoveries above mentioned, the officers placed appellant under arrest. Before they left the house appellant told the officers that the suit and the brown paper

bag found therein belonged to him. He told them he had found the medicine dropper and hypodermic needle in the back yard and had put them in the dresser drawer. He also admitted that the brown cigarette was his and that he had forgotten about it. On the way to the Police Building, in response to the officers' questions, appellant stated that he was buying his marijuana on the "East Side" and that he had bought the contents of the paper sack about a month before, paying $14 for a can of the substance.

In the course of his very brief testimony, appellant did not directly dispute the truth of any of the testimony given by the officers. If appellant denied that he gave his consent to the search, such denial was only by implication. He testified that after he had denied there were narcotics in the house one of the officers said, "He can stand a shakedown, come on." Thereupon, appellant said that he went into the house with the officer who told him to keep his hands in a certain indicated position.

A search of a house with the express, free and voluntary consent of a householder suspected of possessing narcotics is neither unreasonable nor unlawful. It follows that contraband found and seized in the course of such a search may lawfully and properly be received in evidence against the accused. (*People* v. *Burke*, 47 Cal.2d 45 [301 P.2d 241]; *People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Hood*, 149 Cal.App.2d 836 [309 P.2d 835].) It is true as pointed out in *People* v. *Michael, supra,* that one need not forcibly resist an officer's assertion of authority to search, but if he freely consents to a search, then neither the search nor the seizure of evidence found in the course thereof is unreasonable. As the court there stated (45 Cal.2d at page 753), "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." To the same effect are *People* v. *Lujan,* 141 Cal.App.2d 143 [296 P.2d 93], and *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469]. Since the question is one of fact primarily for the trial court's determination, the finding of that court, supported by substantial evidence, is binding upon an appellate court. (*People* v. *Hood, supra,* 149 Cal.App.2d 836, 838; *People* v. *Allen,* 142 Cal.App.2d 267, 281 [298 P.2d 714]; *People* v. *Smith,* 141 Cal.App.2d 399, 402 [296 P.2d 913].)

Appellant, while recognizing that the controlling question is one of fact, argues that the conduct of an accused must be judged in the light of certain cautionary principles: (1) that when consent to a search has been given by an accused after he has been placed under the compulsion of arrest, a court should carefully scrutinize the contention that the consent was voluntarily given; and (2) that a search cannot be justified merely because it resulted in a disclosure the the defendant was in fact guilty of a felony.

These principles are unavailing to appellant. In the first place, the evidence here clearly indicates that appellant voluntarily gave his consent before there was any arrest or threat of arrest. In the second place, the People have not sought to justify the search in this case upon the ground that it produced abundant evidence of guilt. The evidence of a free and voluntary consent revealed by the record under review is manifestly sufficient.

The judgment and order appealed from are affirmed.

Fox, P. J., and Ashburn, J., concurred.